**STATEMENT OF FACTS**

On June 7, 2023, at approximately 2:51 p.m., U.S. Capitol Police ("USCP") Officers were alerted to a license plate hit for a grey Nissan Rogue bearing North Carolina registration XXXXXX, traveling Southbound in the 800 block of North Capitol Street NW, Washington, D.C. Your affiant and another officer, K.D., in the same vehicle, responded to the area to canvass and observed a vehicle with matching make, model, color, and license plate ("Vehicle-1") in the 600 block of H Street NE, Washington, D.C. Your affiant conducted a WALES/NCIC check via USCP radio, which confirmed the vehicle was wanted in connection with three armed robberies in Delaware and Maryland.

Officer K.D. attempted to initiate a traffic stop by activating the USCP vehicle's emergency lights and siren in the 1300 block of H Street NE, Washington, D.C. Vehicle-1 pulled to the right, slowing but not stopping completely, and then abruptly pulled from the curb and accelerated quickly. Officers, including your affiant, pursued Vehicle-1, which weaved in and out of traffic and crossed the double yellow line multiple times. When the pursuit reached 3408 Ely Place SE, Vehicle-1 was stopped by traffic congestion. *See* Image 1, below. At this time, both the driver (later identified as Dremale VANTERPOOL), who was wearing a grey hoodie and dark jeans, and the front passenger (later identified as Torrance BROCK), who was wearing a black hoodie and blue jeans, exited the vehicle and fled on foot westbound in the 3400 block of Ely Place.



*Image 1: USCP Crime Scene Search (CSS) Unit photo of the Nissan Rogue with North Carolina license plate JLL-1621 on the corner of Ely Place and Anacostia Road SE*

1

Your affiant pursued both individuals as they entered the alley on the North curb of the block, continued fleeing through the alley, and exited out to the 3400 block of Minnesota Avenue SE. During the pursuit, your affiant observed both VANTERPOOL and BROCK holding their waistbands consistent with concealing a weighted object, which is characteristic of being armed. The pair continued fleeing northbound in the 3400 block of Minnesota Avenue SE until entering the driveway on the east curb of 3459 Minnesota Avenue SE.



*Image 2: CSS photo showing the driveway (left) of 3459 Minnesota Avenue SE (off-frame, left) separated by a wood fence from the backyard of 3455 Minnesota Avenue (right)*

While pursuing the pair down the driveway, your affiant observed VANTERPOOL toss a white baseball-size object over an adjacent fence into the rear yard of 3455 Minnesota Avenue SE. VANTERPOOL then lost his footing, and your affiant was able to take him into custody. *See* Image 3. At this time, your affiant also observed that BROCK was close to the same fence positioned in a shotput stance consistent with having just thrown something. Officers S.W. and K.D. converged on BROCK in the back left of the driveway and Officer S.W. detained him.



*Image 3: Photo of VANTERPOOL in custody in the driveway of 3459 Minnesota Avenue*

Your affiant and Officer S.W. retraced the pair's flight path and located a firearm near a discarded cell phone and New York Yankees hat in the yard adjacent to 3423 Minnesota Avenue SE. *See* Images 4 and 5. The firearm was a Springfield Armory Hellcat 9mm, Serial Number XXXXXXXX, loaded with one 9mm round in the chamber with a 13-round magazine, containing thirteen (13) 9mm rounds, inserted in the magazine-well.



*Images 4 and 5: CSS photos showing the Springfield Armory Hellcat (red) in the yard adjacent to 3423 Minnesota Avenue SE*

Officers with USCP Crime Scene Search ("CSS") unit responded to the scene and recovered from the yard of 3455 Minnesota Avenue SE a baseball-sized clear plastic bag containing a white rock like substance and a white powdery substance. *See* Image 6.



*Image 6: CSS photo showing the baseball-sized clear plastic bag (red circle) consistent with the one VANTERPOOL was observed throwing over the fence into the yard of 3455 Minnesota Avenue SE*

      A search incident to arrest of VANTERPOOL recovered a digital scale from his left front pocket, $605 in U.S. Currency from his right front pocket, two cellular devices, and a clear bag containing a purple powdery substance.

      Later that evening, at approximately 7:28 p.m., a citizen, using a no caller ID number, contacted USCP and stated that a black handgun was visible in the back yard of 3453 Minnesota Avenue. MPD and CSS officers responded and recovered from the backyard a Taurus G3C 9mm, Serial Number XXXXXXXX, loaded with one 9mm round in the chamber with a 17-round magazine, containing fifteen (15) 9mm rounds, inserted in the magazine-well. *See* Images 7 and 8.



*Images 7 and 8: Photographs taken by CSS showing the positioning of the Taurus (red circle) in the backyard of 3453 Minnesota Avenue relative to the fence (yellow) next to the driveway to 3459 Minnesota Avenue (house numbers added), where your affiant saw BROCK in a "shotput" position*

VANTERPOOL was later identified by his DC identification card, and BROCK was identified by his North Carolina Driver's License. Neither VANTERPOOL nor BROCK had a license to carry a firearm in DC and did not have firearms registered to them. A criminal records check revealed that VANTERPOOL was previously convicted of discharging a firearm into occupied property in Cohwan County (North Carolina) Superior Court Case No. 2018CRS050016 and sentenced to 25 to 42 months of incarceration. A criminal records check revealed that BROCK had been convicted of assault with a deadly weapon with intent to kill and causing serious injury and assault with a deadly weapon with intent to kill in Perquimans County (North Carolina) Superior Court Case No. 2020CRS050175 and was sentenced to 25 to 42 months incarceration. Therefore, VANTERPOOL and BROCK would have been aware at the time of their arrest in this case that they each had prior conviction for a crime punishable by a term of imprisonment of more than one year.

Buccal swabs were obtained from VANTERPOOL and BROCK, which were compared to swabs taken from both recovered firearms. The resulting DNA tests show very strong support for inclusion of VANTERPOOL on the Springfield Armory Hellcat firearm. *See* Image 9.

**Item 1 (Swabs from Springfield Armory Hellcat firearm)**

Male and female DNA was obtained from item 1. Item 1 was interpreted as originating from three individuals.

The DNA results from item 1 are 270 quadrillion times more likely if VANTERPOOL and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors.

| Person of Interest (POI) | Likelihood Ratio (LR)[2] | Level of Support[3] |
|---|---|---|
| VANTERPOOL | $2.7 \times 10^{17}$ (270 quadrillion) | Very Strong Support for **Inclusion** |

BROCK is excluded as a potential contributor to item 1.[4]

*Image 9: Results from comparison of buccal swabs to the Springfield Armory Hellcat firearm*

No conclusions could be drawn from the magazine from the Springfield Armory Hellcat firearm. The resulting DNA tests show very strong support for inclusion of BROCK on the Taurus firearm. *See* Image 10.

7

**Item 3 (Swabs from Taurus handgun)**

Male DNA[6] was obtained from item 3. Item 3 was interpreted as originating from four individuals.

The DNA results from item 3 are 13 million times more likely if BROCK and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors.

| Person of Interest (POI) | Likelihood Ratio (LR)[2] | Level of Support[3] |
|---|---|---|
| BROCK | $1.3 \times 10^7$ (13 million) | Very Strong Support for **Inclusion** |

VANTERPOOL is excluded as a potential contributor to item 3.[4]

*Image 10: Results from comparison of buccal swabs to the Taurus firearm*

Finally, the DNA tests show limited support for inclusion of BROCK and for exclusion of VANTERPOOL on the Taurus magazine. *See* Image 11.

**Item 4 (Swabs from magazine)**

Male DNA[6] was obtained from item 4. Item 4 was interpreted as originating from four individuals.

The DNA results from item 4 are 98 times more likely if BROCK and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors.

| Person of Interest (POI) | Likelihood Ratio (LR)[2] | Level of Support[3] |
|---|---|---|
| BROCK | 98 | Limited Support for **Inclusion** |

The DNA results from item 4 are 5 times more likely if four unknown, unrelated people are contributors than if VANTERPOOL and three unknown, unrelated people are contributors.

| Person of Interest (POI) | 1/Likelihood Ratio (1/LR)[2] | Level of Support[3] |
|---|---|---|
| VANTERPOOL | 5 | Limited Support for **Exclusion** |

*Image 11: Results from comparison of buccal swabs to the magazine from the Taurus firearm*

The suspected narcotics seized from the backyard of 3455 Minnesota Avenue and from VANTERPOOL were also tested. The plastic bag containing a white baseball-like substance in the backyard of 3455 Minnesota Avenue contained two plastic bags, one containing a solid white substance and one containing a white crystalline material. Lab testing identified cocaine present in the solid white substance, which weighed approximately 6.1487 grams. Lab testing also identified cocaine present in the white crystalline material, which weighed approximately 33.6111 grams. Lab testing identified fentanyl and cocaine in the purple powder obtained from VANTERPOOL weighing approximately 196.6 milligrams.

Your affiant knows from training and experience that possession of the amount of the cocaine recovered, as well as a digital scale, firearm, and $640 cash is consistent with distribution.

There are no firearm or ammunition manufacturers in the District of Columbia. Therefore, the firearms and ammunition in this case would have traveled in interstate commerce prior to being recovered in the District of Columbia.

Based on the foregoing, I submit that there is probable cause to believe that VANTERPOOL and BROCK violated 18 U.S.C. § 922(g)(1), which makes it a crime for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess any firearm or ammunition that has been shipped or transported in interstate or foreign commerce.

I further submit that there is probable cause to believe that VANTERPOOL violated 21 U.S.C. § 841(a)(1) and (b)(1)(C), which makes it a crime for any person to possess with intent to distribute cocaine.

Finally, I submit that there is probable cause that VANTERPOOL violated 18 U.S.C. § 924(c)(1)(A)(i), which makes it a crime to, during and in relation to any crime of violence or drug trafficking crime for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm.

_____
PFC. RAYMOND MOONEY
UNITED STATES CAPITOL POLICE

*Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 30th day of April, 2025.*

_____
HONORABLE MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE